READ et al. *v.* THOMPSON.

Adverse possession ceases to be so by parol agreement with the owner of the title to hold for or under him; and admissions to strangers are competent evidence of such an agreement.

Parol evidence of an agreement, by an occupant, before title has been perfected by the statute of limitations, to hold for A., is admissible in an action by A. who has colour of title by a patent, subsequent to the occupant's entry on the land, which recites. prior title from the Commonwealth.

Entry as an occupant is such a commencement of title as will avoid the effect of a recital of a prior title from the Commonwealth by warrant, &c. · Per Woodward, P. J.

In error from the Common Pleas of Clearfield.

*May* 28. This was an ejectment by Thompson against the heirs of Read, for thirteen acres of land, to which the plaintiff had colour of title by deed, and the defendant by purchase and possession. The main question was, whether there was sufficient evidence to rebut the presumption of an adverse holding by Read, who had occupied the land for upwards of forty years.

The plaintiff gave in evidence a patent in 1806, reciting a sale by the commissioners of the Nicholson lands, for a tract warranted in the name of Miles, which was objected to for want of title shown in Nicholson. He then proved that Read resided on an adjoining tract, and that one Dowling, a son of a then owner of the Miles tract, called on him in 1830-1, and inquired if he was paying the taxes on the Miles tract according to his agreement with the owner, to which he replied, he was, and promised to inform the witness when he ceased doing so. The title to the Miles tract was regularly deduced to the plaintiff. He then proved that Read was assessor in 1841, and had this land transferred to Thompson on the assessment books, saying, that he had paid the taxes many years for the use of the land, and that it had become poor; Thompson had purchased it, and he would pay no longer. He then, under objection as irre-

levant, proved declarations by Read to strangers, as early as 1819, that he had paid taxes according to agreement, on a tract adjoining his own, for the use of two cleared fields thereon. Many witnesses stated admissions of the same character, and also that the land belonged to, and had been purchased by Thompson. Under objection that the case was not decided on the question of title, the court admitted the record of an action of *tresp. q. c. f.* by Read's heirs against Thompson, in 1841, in which the pleadings were *lib. ten.* and not guilty, and verdict and judgment for defendant. The plaintiffs had paid taxes on the Miles tract in 1817, and since 1842. The defendants proved that Read had entered on a tract as an improver in 1803, and cleared partly on the one now in question, but it was found there was no vacant land, and he purchased his tract. They gave evidence of his claiming title against a trespasser, and that he was assessed for four hundred acres, from 1805 to 1818, for eight hundred acres from that time until 1840, and thenceforward for four hundred acres.

There was no written evidence of title in Read, and his defence appeared to rest on the statute of limitations.

There was one other objection to evidence than those mentioned above. Dowling had been examined under a bill to perpetuate testimony between the present parties. An objection was made, that no notice had been given of the filing of the deposition.

The points of defendant, the answers to which, contained in the charge, were assigned for error, were in substance: That verbal statements without a written surrender did not affect the plaintiff's title; that his possession by improvement or payment of taxes for twenty-one years was a bar; if there was an abandonment by nonpayment of taxes, and occupation by Read for twenty-one years, verbal representations would not affect his right. That the possession was a bar; after his title perfected by possession, conversations would not affect him, whether with owner or strangers; that those with strangers were to be disregarded.

The court (WOODWARD, P. J.) said to the jury, "The plaintiff exhibits a paper title, which *primâ facie* is perfect. A warrant issued to James Miles for the land in controversy in 1784, and was surveyed in 1785. The deed from the secretary of the Commonwealth, of the 29th of January, 1810, to George Bechtel and Henry Beck, recites the interest of John Nicholson in this warrant, as whose property it was sold by commissioners appointed under acts of Assembly, for enforcing the liens of the Commonwealth against his estate, and the plaintiff has shown a regular derivation of title from

these grantees. But as soon as the defendants showed that their father, Alexander Read, entered upon this land in 1803, and commenced an improvement, which he continued to the time of his death, they rebutted the *primâ facie* case which the recitals in the secretary's deed had made out for the plaintiff; for, being in the actual possession of the land on the 29th of January, 1810, the recitals of the Commonwealth cease to be evidence against him. Recitals in a patent—and the rule is applicable to such a deed as this—are evidence only against the Commonwealth, and *subsequent* claimants. In Penrose *v.* Griffith, 4 Binn. 231, and in Downing *v.* Gallagher, 2 Serg. & Rawle, 455, the effect of recitals was fully considered; and in the last of these cases, Mr. Justice Gibson, after recognising the rule that recitals are evidence against the grantor, and all persons claiming by title derived from him subsequently, but not against a person claiming by title prior to the deed, nor against a stranger, answers an objection that has been raised in this case, that Read was an intruder and claiming by no title whatever, in these very pertinent words :—' But in the case of a patent, who can be considered a stranger ? Every person in possession of land, and claiming it, must be considered as holding either mediately or immediately from the Commonwealth. The commencement of possession, therefore, being the origin of a title of some sort, under the state, I take it to be the business of the party resisting the competency of a recital to show the commencement of his title.' To the same effect precisely was the opinion of the Supreme Court in the case of Ross *v.* Marcy, decided at Sunbury several years ago, on a writ of error to Luzerne county, but never reported. Judge Sergeant told me that he had drawn an opinion in the case, but through some accident it failed to get into the books. In that case, the possession of a mere intruder was considered to be the 'origin of a title of some sort under the state,' and as the patent bore date a few days before he entered, full effect was given to its recitals against him. And it must be so. All lands are derived from the Commonwealth, and the man in possession must hold under her. He cannot hold adversely. And to protect his possession, he is obliged to appeal to some of the Commonwealth's statutes, either of pre-emption or limitation, or to her common law, which is his shield against every assailant. Holding therefore necessarily under the Commonwealth, he is subject to whatever recitals and admissions the state may have made *before* he commenced to hold, but is not affected by such as she may make *afterward.* If the evidence be believed in this case, in regard to the time of

Read's entry, the jury will see that this rule destroys the effect of the recitals in the secretary's deed of the 29th of June, 1810. There is then nothing in the case to connect John Nicholson with the warrant in evidence. Nor is there any thing to raise a presumption to supply the imaginary link, on the principle established in Taylor *v.* Dougherty, 1 Watts & Serg. 324; or Hastings *v.* Wagner, 7 Watts & Serg. 215; for the actual possession and payment of taxes here were by the party *against* whom the presumption is sought to be raised.

"But granting that a connection with the warrant and survey has not been shown, such as would enable the plaintiff to recover against a subsisting, independent title, still, there is enough in the case to show title out of the Commonwealth; and if those under whom the plaintiff claims had taken and held possession of the land for twenty-one years, they would have acquired a title by virtue of the statute of limitations. The plaintiff alleges that this was done; that Alexander Read held, not for himself, but under and for those whose title the plaintiff has obtained. If the jury so find the fact, we instruct them that Read's possession, all the while, inured to the benefit of Dowling and Bechtel, and if he completed a title under the statute of limitations, it belonged to them, and they or their heirs might well convey it to the plaintiff, who has a right to assert it against the heirs of Read.

"The defendants, who are sons of Alexander Read, claim the land by virtue of the statute, and they deny, of course, that their father held under those from whom the plaintiff has derived title.

"The statute requires a possession of land for twenty-one years, that is, 'actual, continued, visible, notorious, distinct, and hostile.' And why must it be hostile? Because 'the statute protects the occupant, not for his merits, for he has none, but for the demerit of his antagonist in delaying the contest beyond the period assigned for it, when papers may be lost, facts forgotten, or witnesses dead.' There is no dispute about the possession of this land for the requisite period by Alexander Read, but the great question for the jury is, did he hold it adversely, as to those who then owned the plaintiff's title? Was it a hostile possession as to them, or was it a possession under and for them? This is a question for the jury, under all the evidence in the cause.

"Now, if Read, claiming the Joseph Price tract, cleared these thirteen or fourteen acres in dispute, on the Miles tract, which adjoins Joseph Price, and afterward, having discovered his error, agreed with Dowling, then a part owner of the Miles tract, that

he would pay the taxes of the whole tract for the use of these fields, and he continued so to hold, his possession and payment of taxes enure to the benefit of the plaintiff.

"Neither he in his lifetime, or his sons after him, could any more set up the statute of limitations against Dowling's title than can a tenant set it up against his landlord. There was no demerit in delaying the contest where there was no antagonist, and Read's possession not being *hostile*, it lacked the most essential ingredient of a title under the statute of limitations. But then, it being a continued possession under and for Dowling, and hostile as to all the rest of the world, it gives the title to him. If Read, therefore, fixed upon himself a tenancy, in the judgment of the jury, his possession can have no other effect than to perfect the plaintiff's right. And it signifies nothing that his original entry was adverse and hostile. It must be a *continued hostility*. If an intruder will attorn to a claimant not in possession, and thus betray him into a delay to sue, he has no claim on the protection of the statute. Read had been in possession not more than sixteen years when he spoke to Moses Norris of a pre-existing arrangement between him and Richard Dowling, whereby he was to pay the taxes of the tract for the use of the cleared fields. What was the precise date of this arrangement has not been shown, but if this witness be believed, it must have been some time before his possession, if hostile to Dowling at first, had matured into a title.

"But the counsel of the defendants call on the court to instruct the jury, that 'after the title of Alexander Read was perfect by an adverse possession of twenty-one years, no loose conversations either with a person reputed the owner of the legal title or his agent, could divest that title, nor any thing short of a conveyance in writing.' And again—'That the jury should disregard all evidence of conversations with neighbours, or persons not interested in the title, on the part of Alexander Read, such not being evidence to affect the defendants' title.' And still again—'If the jury believe that Alexander Read, deceased, was in legal possession of the premises in dispute in 1816, or at any time subsequent, any verbal statements or representations in relation to it could not divest him or his heirs of their right, and unless a surrender of his right in writing, in accordance with the act of Assembly, had been produced, which has not been done, the plaintiff is not entitled to recover.'

"We cannot assume that the title of Read was 'perfect by an adverse possession of twenty-one years,' for the question to be decided by the jury is, whether that possession was adverse to the

plaintiff's right. And on this point the declarations of Read are evidence. It is a general rule of evidence that the declarations of a party in possession of land, as to the mode of his holding, are evidence; and where they have been frequent, explicit, and unfavourable to his own interests, accompanied too by such acts as witnesses attribute to Read when he was assessor, they become pregnant proof of the fact alleged. The case of the Farmers' and Mechanics' Bank *v.* Wilson, 10 Watts, 262, has been much relied on by defendants' counsel as furnishing the rule applicable to the evidence in this cause. Some of the *dicta* of the judge who delivered the opinion in that case, have been shaken, if not denied, by what the Chief Justice said in the case of Sailor *v.* Hertzogg, 2 Barr, 184, where it was ruled that when the title is incomplete under the statute of limitations, admissions of facts by the party in possession are evidence to show that his possession is not held adversely. I agree that the admission must relate to the title now set up against the party in possession; but that it must be made to the owner of that title or his agent, and that if made to neighbours and persons not in interest it is to be excluded from the jury, are propositions to which I do not assent.

" Where the entry at first was adverse, the agreement by which it ceased to be so, and which subjected the occupier to the will of the owner, must of course be made with the owner or his agent. A treaty with neighbours on such a subject would be absurd. But admissions to neighbours, that such arrangement had been made with the owner, are evidence. It is a fact as capable of proof by such evidence as any other that may affect a man's estate, life or liberty. A jury should always require clear and satisfactory proof of every fact that is to affect titles, but I cannot say that they are to stop their ears against the declarations of a party who admitted his tenancy through a series of years, and who referred, time and again, to an agreement with an owner, of at least a colourable title, that he would occupy for him. Whether the admissions amount to proof of the agreement, it is for the jury to decide—that they are competent, as a medium of proof, is what we decide.

" The statute of frauds and perjuries has no application to the facts of the case. The cause does not involve the transfer of a title by parol unaccompanied by change of possession; but rather the question, for whom the title was matured under the statute of limitations. If Read was not the tenant of Dowling he matured that title for himself, and at his death the law cast it on his heirs, who are entitled to hold the land under it—but if he was, he matured

it for those from whom the plaintiff derived it, and the cause is with him. As you find this fact, the verdict will be for the plaintiff or defendants."

The admission of the evidence excepted to; the charge on the defendants' points, that the statute of frauds did not apply, and that plaintiff might recover without showing title in himself from the warrantee, were the errors assigned.

*Wallace* and *Blanchard*, for plaintiff in error, cited 4 Watts & Serg. 472; Act 1772, (Stat. of Frauds;) Rob. Dig. 304; 2 Watts & Serg. 240.

*Burnside* and *Smith*, contrà, were stopped by the court.

*June* 1. BURNSIDE, J.—We have listened attentively to the arguments of the counsel of the plaintiff in error, and are of opinion the evidence offered by the defendant in error was properly received. We adopt the charge of the president judge, believing it strictly correct, and as favourable to the plaintiffs in error as the case, on the evidence, would warrant.                   Judgment affirmed.