## UNITED STATES v. KERN RIVER CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   April 5, 1920.)

No. 3406.

1. **Waters and water courses ⬤➾27—Right of way for canals for power purposes granted by statute only where main purpose is irrigation.**

Under Act March 3, 1891, § 18 (Comp. St. § 4934), granting a right of way through the public lands to any canal company formed for the purpose of irrigation, and Act May 11, 1898 (Comp. St. §§ 4943, 4938), providing that such rights of way may be used for purposes of a public nature and for certain other purposes, including the development of power as subsidiary to the main purpose of irrigation, a right of way for a canal for the development of power can only be obtained when such development is subsidiary to the main purpose of irrigation.

2. **Public lands ⬤➾109—Suit maintainable to set aside approval of canal company's maps of location of right of way.**

A suit may be maintained by the government to set aside, for fraud and mistake, the approval by the Secretary of the Interior of a canal company's maps of location, filed as the basis of a right of way across public lands.

3. **Public lands ⬤➾109—Limitations not applicable to suit to set aside approval of location of right of way.**

Act March 3, 1891, § 8 (Comp. St. §§ 4992, 5114), limiting suits to vacate patents, does not apply to a suit to set aside for fraud and mistake the approval by the Secretary of the Interior of a canal company's maps of location, filed to obtain a right of way across public lands.

4. **Limitation of actions ⬤➾11(1)—Government not subject to limitations, in absence of express provision.**

Statutes of limitation do not run against the sovereign, in the absence of some express statutory provision, and if the statute is made applicable to a class of suits only, it will not be extended to other cases by implication.

5. **Appeal and error ⬤➾845(2)—Conclusiveness of findings has little application to case submitted on pleadings and agreed statement.**

The rule that an appellate court will not disturb the findings of the trial court on disputed questions of fact, unless it is clearly manifest that there is no substantial evidence to support them, has little or no application to a case submitted on bill and answer and an agreed statement of facts.

6. **Waters and water courses ⬤➾27—Approval of location of right of way of canal through forest reserve held obtained by fraud.**

The approval by the Secretary of the Interior of a canal company's maps of location, filed as the basis of a right of way through a forest reserve, was obtained by fraud, where, at the time of its original and amended applications, its attention was called to two statutes, one granting a right of way for irrigation purposes and the other for power purposes, but falsely certified that the right of way was desired solely for the purposes prescribed in the acts relating to rights of way for irrigation purposes.

7. **Public lands ⬤➾109—Approval of location of right of way across forest reserve with knowledge of facts held in excess of authority.**

If the approval by the Secretary of the Interior of a canal company's maps of location of its right of way through a forest reserve was given with full knowledge of the facts that the canal was to be constructed for power purposes, and that the company had not complied with the statute relative to rights of way for such purposes, he exceeded his authority, and the validity of his approval might be challenged in a suit to set aside such approval and restrain the use of the right of way.

---

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit by the United States against the Kern River Company and others. From a decree of dismissal, the United States appeals. Reversed, with instructions.

Section 18 oₓ the Act of March 3, 1891 (26 Stat. 1095 [Comp. St. § 4934]), provides:

"That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation and duly organized under the laws of any state or territory, which shall have filed, or may hereafter file, with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof; also the right to take, from the public lands adjacent to the line of the canal or ditch, material, earth, and stone necessary for the construction of such canal or ditch: Provided, that no such right of way shall be so located as to interfere with the proper occupation by the government of any such reservation, and all maps of location shall be subject to the approval of the department of the government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective states or territories."

Section 19 (Comp. St. § 4935) provides:

"That any canal or ditch company desiring to secure the benefits of this act shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way."

This act was amended by the Act of May 11, 1898 (30 Stat. 404 [Comp. St. §§ 4913, 4938]), and as amended provides that the rights of way thus acquired "may be used for purposes of a public nature, and said rights of way may be used for purposes of water transportation, for domestic purposes, or for the development of power, as subsidiary to the main purpose of irrigation."

The Kern River Company is a corporation organized under the laws of the state of Maine, for the purpose of carrying on the business of building, constructing, maintaining and operating canals, ditches, reservoirs, dams, flumes, aqueducts, pipes and pipe lines for carrying, storing and supplying water for the purposes of irrigation, for the transmission of power, and for other purposes not material here. The company filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization, and the maps provided for by the act and the regulations applicable thereto, and made application for a right of way over the Sequoia National Forest in the state of California. On the 12th day of November, 1897, the Commissioner of the General Land Office, in a letter to the register and receiver at Visalia, Cal., called attention to the fact that "the two acts of March 3, 1891, and May 14, 1896, are so different in the character of estates or permissions therein provided for, as well as in the use to which the rights of way may be devoted and the extent of such rights of way, that no permission or grant can be sanctioned which is based on the two acts"—citing H. W. O'Melveny, 24 Land Dec. 560.

It may be here stated that the Act of May 14, 1896 (Comp. St. § 4944), provides:

"That the Secretary of the Interior be, and hereby is, authorized and empowered, under general regulations to be fixed by him, to permit the use of right of way to the extent of twenty-five feet, together with the use of

necessary ground, not exceeding forty acres, upon the public lands and forest reservations of the United States, by any citizen or association of citizens of the United States, for the purposes of generating, manufacturing, or distributing electric power."

The application for the right of way was accompanied by the certificate of the president and secretary of the Kern River Company, certifying, among other things, that the maps had been prepared for the approval of the Secretary of the Interior in order that the company might obtain the benefit of sections 18 to 21, inclusive, of the act of Congress approved March 3, 1891 (Comp. St. §§ 4934–4937), entitled "An act to repeal timber culture laws and for other purposes," and section 2 of the Act of May 11, 1898, entitled "An act to amend an act to permit the use of right of way through public lands for tramroads, canals and reservoirs, and for other purposes," and further certifying that the right of way for said canal was desired solely for the purposes provided by the aforesaid acts. On the 14th day of April, 1899, the Secretary of the Interior approved the maps and location as required by law, subject to all valid existing rights. The Kern River Company thereafter constructed its canal and power house, transmission lines, etc., at a cost of approximately $3,000,000. Some time prior to the 19th day of January, 1905, the company filed an application with the Secretary of the Interior to amend its original maps and location to conform to the line of the ditch or canal as constructed.

Again the Acting Commissioner of the General Land Office, in a letter to the register and receiver at Visalia, said: "The company's attention is called to the fact that, unless the canal as shown by the amended survey of the amended definite location is desired for the purpose of *irrigation only*, the application cannot be granted under the Act of March 3, 1891 (26 Stat. 1095), under which it was filed, but should be filed under the Act of February 15, 1901 (31 Stat. 790), which grants permission to use the right of way over the public lands for irrigation and other purposes"—citing Denver, Northwestern & Pacific Ry. Co. v. Hydroelectric Power Company, 32 Land Dec. 452.

In support of this application the president and secretary of the Kern River Company certified as before that the approval of the Secretary of the Interior was sought "in order that the company might obtain the benefits of sections 18 to 21, inclusive, of the act of Congress approved March 3, 1891, entitled 'An act to repeal timber culture laws, and for other purposes,' and section 2 of the act of Congress approved May 11, 1898, and that the right of way described on said map was desired for public purposes." On the 27th day of November, 1905, the amended application was approved by the Secretary of the Interior, subject to all valid existing rights. On the 27th day of March, 1908, by direction of the Secretary of the Interior, notice was served upon the Kern River Company to show cause within 90 days from date of such notice why proceedings should not be instituted to cancel the grant of the right of way, on the ground that the same was procured by the approval of said maps for the main purpose of irrigation, but was in fact used solely for power purposes. In response to this notice the company made answer, and on the 18th day of November, 1909, the Acting Commissioner of the General Land Office served notice on the company that it would be given 60 days within which to further amend its amended application for a right of way, so as to bring the case within the provisions of the Act of February 15, 1901 (Comp. St. § 4946), and providing that such amended application should be accompanied by a proper relinquishment of all rights and interests acquired under the approvals given under the act of 1891. With this request the company failed and refused to comply.

It was stipulated, among other things, that the Kern River & Los Angeles Electric Power Company was organized as a corporation under the laws of the state of Arizona on May 18, 1895, and that the object of the project was as follows: "The intent and object of the enterprise is to use the flow of the North fork of Kern river for the generation of electrical energy, and to convey and sell the same to various consumers as far as Los Angeles. It is probable that 80 per cent. of the total power generated would go to that city; the remaining 20 per cent. being disposed of to the mining, milling, and agricultural interests embraced in the first 70 miles of the line."

This company was succeeded by the Kern River Company upon its organization, with the same officers, and the purpose was to develop the same projects. The canal constructed by the Kern River Company has never been used for the purpose of irrigation, but has been used at all times solely for the purpose of carrying water to be used to generate electric power, which the company and its successors sell mainly for the purpose of furnishing motive power to electric railways in the municipalities of Southern California. A small percentage of the electricity is used to pump water for irrigation from wells along the course of the power lines.

The present suit was brought by the United States to vacate and set aside the order of the Secretary of the Interior approving the maps of location for the ditch or canal, filed under the act of March 3, 1891, to cancel and annul the grant of the right of way; to quiet title in the plaintiff, and to restrain the defendants from using the right of way until they have complied with the requirements of the act of February 15, 1901, relating to the construction of ditches over forest reserves for power purposes. From a decree of dismissal the present appeal is prosecuted.

Robert O'Connor, U. S. Atty., and Milton Bryan, Asst. U. S. Atty., both of Los Angeles, Cal., and H. P. Dechant, Asst. Sol., Department of Agriculture, of San Francisco, Cal., for the United States.

Gibson, Dunn & Crutcher and Roy V. Reppy, all of Los Angeles, Cal., for appellees.

Before GILBERT and HUNT, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge (after stating the facts as above). [1] From the foregoing statement it seems quite apparent that the appellees are operating and maintaining a canal used solely for the purpose of generating, manufacturing, and distributing electric power, over a public forest reserve of the United States, without obtaining the necessary permit from the Secretary of the Interior, and without authority of law. We say this is quite apparent, because under the original act of 1891 the right of way could only be obtained for purposes of irrigation, and under the amendment of 1898 the right was not extended so as to include general power purposes; for whatever construction the words "may be used for purposes of a public nature" in the latter act might receive, if standing alone, these general words are limited and qualified by the specific provision "or for the development of power, as subsidiary to the main purpose of irrigation," so that it is entirely manifest that a right of way for a canal for the development of power can only be obtained under the amendment of 1898, when such development is subsidiary to the main purpose of irrigation, and no such case is presented here. Has, then, the government no standing in a court of equity to prevent such usurpation. The appellees claim not, first, because a suit of this nature will not lie without express legislative authority therefor; second, because the suit is barred by section 8 of the Act of March 3, 1891 (Comp. St. §§ 4992, 5114); and, lastly, because this court must accept the finding of the court below that the approval of the maps and location for the canal were not obtained through fraud or mistake.

[2] 1. In answer to the first objection it is only necessary to say that this is not a suit to declare a forfeiture of a land grant for breach

of condition, but the ordinary suit to set aside the approval of the Secretary of the Interior on the ground of fraud and mistake, like the familiar suits prosecuted every day to set aside patents obtained by similar means. As said by the Supreme Court in Noble v. Union River Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123, in reference to a grant of a right of way for railway purposes:

"The railroad company became at once vested with the right of property in these lands, of which they can only be deprived by proceedings taken directly for that purpose. If it were made to appear that the right of way had been obtained by fraud, a bill would doubtless lie by the United States for the cancellation and annulment of an approval thus obtained."

There is another ground upon which the jurisdiction of a court of equity may perhaps be sustained. If we should assume that the appellees acquired a right of way for a canal for irrigating purposes and for the development of power subsidiary thereto, an injunction would seem to be an appropriate remedy to prevent the continuing and threatened use of the right of way thus obtained for other and different purposes and for purposes not authorized by law.

[3, 4] 2. Nor is the suit barred by the statute of limitations. The statute upon which the appellees rely provides:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." Comp. St. § 5114.

The term "patent," when applied to a grant of public lands, has a well-defined meaning. Thus section 458 of the Revised Statutes (Comp. St. § 705) provides:

"All patents issuing from the General Land Office shall be issued in the name of the United States, and be signed by the President, and countersigned by the Recorder of the General Land Office; and shall be recorded in the office, in books to be kept for the purpose."

It is a well-established rule that statutes of limitations do not run against the sovereign, in the absence of some express statutory provision to the contrary, and if the statute is made applicable to a class of suits only it will not be extended to other cases by implication. It was well known to Congress that grants of public lands are not always made by patent. Indeed, the grant of the right of way in question made by the same act is of that character. And had Congress intended that the bar of the statute should apply, not only to patents, but to all legislative grants, it would have so provided in express terms. Again, if this be treated merely as a suit to restrain the unauthorized use or occupation of the forest reserve, the statute can have no application.

[5, 6] 3. The rule invoked by the appellees that an appellate court will not disturb the findings of the trial court on disputed questions of fact, unless it is clearly manifest that there is no substantial evidence to support them, has little or no application to a case submitted on bill and answer and an agreed statement of facts. Furthermore, there is little room for controversy over the facts in this case. It is apparent

that the power company was attempting throughout to obtain a permanent right of way for a canal to be used for power purposes, under an act of Congress which granted no such right. When the first application was made, the Commissioner of the General Land Office called attention to the two acts, the one granting a right of way for irrigation purposes, and the other for power purposes, and ruled that an application based on the two acts would not be approved. To overcome this objection, doubtless, the proper officers of the power company certified "that the right of way for said canal was desired solely for the purposes prescribed by the aforesaid acts," referring back to the acts of 1891 and 1898. This certificate was essentially and unqualifiedly false. When the amended application was filed, attention was again called to the fact that the application could not be made under the act of March 3, 1891, unless the canal as shown by the amended survey was desired for the purposes of irrigation only. To overcome this objection the officers of the power company again certified:

"That the map has been prepared to be filed for the approval of the Secretary of the Interior in order that the company might obtain the benefits of sections 18 to 21, inclusive, of the act of Congress approved March 3, 1891, entitled 'An act to repeal timber culture laws, and for other purposes,' and section 2 of the act of Congress approved May 11, 1898, and that the right of way described on said map was desired for public purposes."

This certificate, while somewhat ambiguous, was doubtless intended to and did convey to the department the impression that the right of way was authorized by the acts referred to, and was likewise false.

[7] For these reasons, the charge of fraud, in our opinion, is fully sustained; but, if we should accept the appellees' view of the case, and find that the approval of the Secretary was given with full knowledge of all the facts, it would not avail them, because in that event the Secretary simply exceeded his authority, and the validity of his approval may well be challenged in a suit of this kind. Thus, in United States v. Poland, 251 U. S. 221, 40 Sup. Ct. 127, 64 L. Ed. ——, decided January 5, 1920, the Supreme Court held that patents issued for more than 160 acres in a single body in the territory of Alaska under soldiers' additional homestead rights, were void, notwithstanding there was no fraud and the patents issued with full knowledge of all the facts.

For the foregoing reasons, we are of opinion that the court below erred, and that the decree should be reversed, with instructions to enter a decree in favor of the United States, canceling the orders approving the maps and location for the right of way, and enjoining the appellees from further maintaining their canal on the forest reserve. The operation of the injunction should be suspended for a reasonable time, however, to enable the appellees to make application to the proper department for such permit or right as is authorized by law.