## Armstrong *versus* Caldwell.

1. A conveyance of "the full right, title and privilege of digging and taking away coal to any extent (the grantee) may think proper * * under the land of the" grantor, effects a severance of the right to the surface from the right to the underlying coal, and makes them distinct corporeal hereditaments.

2. The presumption that the party having the possession of the surface has the possession of the subsoil also, does not exist when these rights are severed.

3. In such case the owner of the minerals does not lose his right or his possession by any length of non-user. He must be disseised to lose his right, and there can be no disseisin by act that does not take the minerals out of his possession.

4. The Statute of Limitations is applicable to all corporeal hereditaments, including those that are only subsurface rights.

5. The adverse possession of the mine by the owners of the surface, for the statutory period would give title; but it must be distinct from the possession of the surface. It is unaided by surface rights or occupancy.

6. The possession to give title must be actual (as distinguished from constructive), exclusive, continued, peaceable and hostile.

7. If the owner of a mine is not in actual possession, and any person digs pits or drives adits, and carries on mining operations continuously for twenty-one years adversely to the right of any other, he may acquire a right; in such case he takes possession of the entire body of minerals in the land.

8. The court below left it to the jury to find that the plaintiff had acquired

title to the coal, by having taken it out for family and neighborhood uses at intervals for twenty-one years, without evidence that the taking had been constant and continuous. *Held*, to be error.

9. It is for the court to say what kind of possession is necessary to give title by the statute.

10. The first entry of the grantee to mine having been made more than twenty-one years after the grant, the court instructed the jury that the statute was primâ facie a bar. *Held*, to be error, the presumption being that the possession accompanied the title; the burden was on the plaintiff to show that he had taken and maintained adverse possession.

ERROR to the Court of Common Pleas of *Westmoreland county.*

Trespass, commenced August 12th 1863, by William S. Caldwell against Charles Armstrong, for breaking and entering the close of the plaintiff and carrying away 20,000 bushels of coal.

James Caldwell was the owner of a farm (the *locus in quo*), and on the 27th of May 1831 conveyed two pieces of land, part of it, to George Greer, and " also, the full right, title and privilege of digging and taking away stone-coal to any extent, he, the said George Greer, may think proper to do or cause to be done under any of the other land now owned and occupied by the said Caldwell, provided nevertheless the entrance thereto and the discharge therefrom be on the said described premises." James Caldwell died in 1847, having devised the farm to his son, William S. Caldwell, the plaintiff. Through various conveyances, the title of Greer vested in Armstrong, the defendant, on the 14th of April 1864.

In Caldwell *v.* Fulton, 7 Casey 475, it was decided that the above-stated grant conveyed to Greer the absolute ownership of all the coal under Caldwell's land; and in Caldwell *v.* Copeland, 1 Wright 427, it was decided that adverse possession by Caldwell of the surface for twenty-one years did not bar the right of the owners of the subsoil. In this suit, Caldwell claimed to recover under the Statute of Limitations, upon the allegation that he had held possession of the coal for twenty-one years.

There was evidence that Caldwell, the father, during his life took out coal from under his land for his own use, and also for sale to his neighbors; that Greer was in sight of his mining and had not been known to challenge Caldwell's right, and had never taken any coal from Caldwell's land; that the plaintiff worked the mines in the same way until within two or three years of the trial. There was evidence also that one Fulton, under a lease from one of the intermediate owners of Greer's right, made an entry in the fall of 1852 for the purpose of taking out coal.

The court (Buffington, P. J.), amongst other things, charged as follows:—

" What constitutes a continuous possession may depend upon the purposes for which it was used and the beginning of the

periods of actual user. In the case of mines used for supplying a distant market with large or considerable quantities, or of supplying a manufactory, as a furnace or rolling-mill, there can be no doubt but what such constant operations, coupled with claim, would be continuous as to the whole. [A mine that is used alone for family and neighborhood purposes, as this seems to have been, is much more doubtful. We must either say that the statute cannot apply in such cases at all when the limited demand did not require constant and continuous operation, or adopt a less stringent rule, one with such instructions and definitions as we can give from analogies, and leave it to the intelligence of the jury to say whether there had been such a possession as to give title by the statute.]

[" We are requested to say that the evidence in this case does not warrant the submission of this fact to the jury. We decline to do so for the reason we have stated, that the rule or standard by which to judge of such possession in case of mines has not become fixed or definite, and in the judgment of the court depends much upon the circumstances of each case.]

" The next question is, if the plaintiff's possession was sufficient to give title, has the defendant shown such an entry as takes away the protection of the statute ? [The deed was in May 1831, and in the fall or latter part of summer 1852, William Fulton took undoubted possession by extending the entries and rooms over the line and into the Caldwell land. , This was over twenty-one years, and primâ facie, the statute was a bar."]

The jury found for the plaintiff $81.90. The defendant having taken a writ of error, assigned for error the three portions of the charge included in brackets.

*W. H. Lowrie* and *J. C. Hunter*, for plaintiff in error, cited Nearhoff *v.* Addleman, 7 Casey 279 ; Hawks *v.* Senseman, 6 S. & R. 21 ; Adams *v.* Robinson, 6 Barr 271 ; Hole *v.* Rittenhouse, 1 Casey 493 ; De Haven *v.* Landell, 7 Id. 126 ; Groft *v.* Weakland, 10 Id. 307 ; Martin *v.* Jackson, 3 Id. 510 ; Murphy *v.* Richardson, 4 Id. 294 ; Boults *v.* Mitchell, 3 Harris 380 ; Bolton *v.* Hamilton, 2 W. & S. 294 ; Wallace *v.* Duffield, 2 S. & R. 527 ; Jones *v.* Porter, 3 Penna. R. 132 ; Buckholder *v.* Sigler, 7 W. & S. 154 ; Watson *v.* Gregg, 10 Watts 296 ; Cooper *v.* Smith, 9 S. & R. 26 ; Stewart *v.* Roderick, 4 W. & S. 188 ; McMasters *v.* Bell, 2 Penna. R. 180 ; Marsh *v.* Weckerly, 1 Harris 250 ; Washabaugh *v.* Entriken, 10 Casey 74 ; Sorber *v.* Willing, 10 Watts 141 ; Hole *v.* Rittenhouse, 1 Wright 116 ; Caldwell *v.* Copeland, Id. 427 ; Union Canal Co. *v.* Young, 1 Whart. 426 ; Colvin *v.* Burnet, 17 Wend. 568 ; Butler *v.* Phelps, Id. 642 ; Hart *v.* Vose, 19 Id. 365 ; Luce *v.* Carley, 24 Id. 454.

[Armstrong v. Caldwell.]

*H. P. Laird*, for defendant in error, cited Kite *v.* Brown, 5 Barr 291; Leeds *v.* Bender, 6 W. & S. 315; Fitch *v.* Man, 8 Barr 503; Johnston *v.* Irwin, 3 S. & R. 291; Mackentile *v.* Savoy, 17 Id. 104; Porter *v.* Maginnis, 1 Barr 413; Watson *v.* Gregg, 10 Watts 289; Cunningham *v.* Patton, 6 Barr 355; Garrett *v.* Jackson, 8 Harris 331; Jones *v.* Crow, 8 Casey 398; Ament's Executors *v.* Wolf, 9 Id. 331; Hole *v.* Rittenhouse, 1 Wright 119.

The opinion of the court was delivered, January 7th 1867, by STRONG, J.—That under the deed from James Caldwell to George Greer, made the 27th day of May 1831, the latter acquired the absolute ownership of all the coal under the surface of the grantor's land, is not now in controversy. Nor is it denied that Armstrong, the plaintiff in error, has succeeded to the rights of Greer under that conveyance. But the plaintiff below, who is the son and devisee of James Caldwell, contends that Armstrong's title has been lost, by an adverse possession of the coal, continued for a period of more than twenty-one years. This adverse possession, he claims, was taken by his father, and maintained by him and the plaintiff himself until an entry was made under the Greer title in the summer of 1852.

Notwithstanding his deed to Greer, James Caldwell remained the owner of the surface. His deed effected a severance of the right to the surface from the right to the underlying coal. It made them distinct corporeal hereditaments. It is, no doubt, the general presumption that a party who has possession of the surface of land has possession of the subsoil also, because, ordinarily, the right to the surface is not severed from the right to the strata below the surface. But this presumption does not exist when these rights are severed. Each then becomes a distinct possession. In such a case, the possession of the surface, following the right, is as distinct from the possession of the minerals or subsoil strata, which have been severed in right, as is the possession of one tract of land from that of another not in contact with it. Hence it is settled that when, by a conveyance or reservation, a separation has been made of the ownership of the surface from that of the underground minerals, the owner of the former can acquire no title by the Statute of Limitations to the minerals, by his exclusive and continued enjoyment of the surface: Caldwell *v.* Copeland, 1 Wright 427. Nor does the owner of the minerals lose his right or his possession by any length of *non-user:* Seaman *v.* Vandrey, 16 Ves. 390; Smith *v.* Lloyd, 9 Exch. 562. He must be disseised to lose his right; and there can be no disseisin by act that does not actually take the minerals out of his possession. There seems to be no reason why the Statute of Limitations

[Armstrong *v.* Caldwell.]

should not be held applicable to all corporeal hereditaments, including those that are only sub-surface rights.    The British statute of 3 & 4 Will. 4, c. 27, certainly is applicable to such rights, and it can hardly be said to be more comprehensive than ours.    In Caldwell *v.* Copeland it was said that adverse possession of the mine, by the owners of the surface, for the statutory period, would avail ·as title.    But such possession must be distinct from that of the surface.    It is unaided by surface rights or surface occupancy.    What, then, is adverse possession of the coal in a tract of land, in a case where the owner of the land has by deed severed the ownership of the coal from the ownership of the surface ?    Its nature cannot be changed by the fact that it is more difficult of enjoyment.    Like adverse possession of every other corporeal hereditament, it must be actual (as distinguished from constructive), exclusive, continued, peaceable and hostile, for twenty-one years, in order to give title under the Statute of Limitations. There is no reason for adopting a less stringent rule.    The owner of the surface can acquire title against the owner of the minerals underneath by no acts, or continuous series of acts, that would not give title to a stranger.    If the owner of a coal-mine is not in actual possession, and the owner of the surface, or any other person, digs pits or drives adits into the minerals and carries on mining operations there continuously for the statutory period, adversely to the right of any other, he may acquire a right.    In such a case he takes actual possession of the entire body of minerals in the tract of land: Barnes *v.* Manson, 1 M. & Selw. 77. He may therefore acquire a title to the whole.    But inasmuch as there cannot be any residence upon the coal, or cultivation, without continual *pedis possessio*, or retention of the hold upon the mine, there can be no ouster of the owner, and consequently no acquisition of a right.    If one digs turves, or cuts wood, upon another's land for his own family use, and if he even sells some of the turves he dug or the wood he cut to his neighbors, it is not pretended that he can acquire title to the land by such conduct, though repeated at intervals through the whole period of twenty-one years.    Yet such acts are more notorious, and as much (if not more) a challenge of the owner's right than is taking coal from a coal-deposit, by the owner of the surface, for his family use and for the use of his neighbors.

The court below, therefore, erred in leaving to the jury to find that the plaintiff had acquired title to the coal, by having taken out some of it for family and neighborhood uses, at intervals during twenty-one years, without any evidence that the taking had been constant and continuous.    The learned judge seems to have had the impression that a less stringent rule is to be applied to possession of an underground corporeal hereditament than the

[Armstrong *v.* Caldwell.]

law demands when the question relates to possession of the surface. He therefore intimated that there might be such a relaxation of the rule, and left it to the jury to say whether there had been such a possession in this case as is requisite to give title by the statute. This was erroneous for two reasons. One has already been mentioned; and the other is, that it is for the court, and not for the jury, to determine what kind of possession is necessary to give title by the statute. And we are unable to see any evidence of such adverse possession by the plaintiff, or by his father, as justified the submission to the jury of the question whether Armstrong had lost his right. The 1st and 2d assignments of error are therefore sustained.

And so is the 3d. It was a very palpable error to instruct the jury that the deed for the coal having been made in May 1831, and the grantee having made his first entry on the vein in the summer of 1852, more than twenty-one years after his title accrued, the statute was primâ facie a bar. The prima facies was all the other way. Neglect of the grantee to enter, as we have seen, did not interfere with his right, or raise any presumptions against it. Having the title, the possession was presumptively in him, or those holding under him; and the burden was on the plaintiff to show that he, or his father under whom he claimed, had taken and maintained that adverse, continued, notorious and hostile possession which is essential to bar an owner's right.

The judgment is reversed, and a *venire de novo* awarded.