### SHREWSBURY et al. v. POCAHONTAS COAL & COKE CO.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1914.)

No. 1263.

1. MINES AND MINERALS ⊚⟞⟞55—DEEDS—FORGERY—SUFFICIENCY OF PROOF.
    Evidence considered, and *held* to sustain the finding of a trial court that a deed to the coal and minerals under a tract of land was not a forgery, but was executed by the owner of the land.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. ⊚⟞⟞55.]

2. DEEDS ⊚⟞⟞116—GENERAL WARRANTY—AFTER-ACQUIRED TITLE.
    Under the law of West Virginia, a conveyance of land by deed with a general warranty, executed by the equitable owner, operates to pass to the grantee an after-acquired legal title.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 330; Dec. Dig. ⊚⟞⟞116.]

3. MINES AND MINERALS ⊚⟞⟞49—ADVERSE POSSESSION—OCCUPATION OF SURFACE.
    Possession of the surface of land is not adverse to the title to the coal thereunder, where the estate in the coal has been severed as to title.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135; Dec. Dig. ⊚⟞⟞49.]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Bluefield; Benjamin F. Keller, Judge.

Suit in equity by the Pocahontas Coal & Coke Company against G. W. Shrewsbury and others. Decree for complainant, and defendants appeal. Affirmed.

Randolph Henry, of Roanoke, Va. (J. Hayden Gadd, of Princeton, W. Va., on the brief), for appellants.

A. W. Reynolds, of Princeton, W. Va. (Col. Childers, of Pineville, W. Va., and Joseph S. Clark, on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

⊚⟞⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. This suit was brought by the appellee, Pocahontas Coal & Coke Company, to quiet its title to the coal and minerals, the ownership of which is also claimed by appellants, in a certain tract of land in Wyoming county, W. Va., containing some 393 acres, and known as school section No. 163.

It appears that an extensive tract, stated to be 273,000 acres, became forfeited to the state of West Virginia for nonpayment of taxes, and that proceedings were instituted in 1880, in the circuit court of Wyoming county, by W. B. McClure, commissioner of school lands, against Jos. Maitland and others, the former owners of this tract, for the purpose of selling the same, or a large portion thereof, for the benefit of the school fund of the state, as provided by the statute laws then in force. This tract was divided and laid off in sections of varying acreage, and several hundred sections, including No. 163, were sold by the commissioner on November 1, 1881. The report of this sale, which was confirmed by decree of November 24, 1881, describes the land in question as follows:

"Tract No. 163, containing 393 acres on Barker's creek, at 10c. per acre. Wash Solesbury purchaser, with G. R. McKinney security; cash paid $9.80, note for $29.50."

By decree of July 13, 1882, it is recited that certain parties, among them "Wash Shrewsbury," had paid for the lands sold to them as above stated, and the commissioner was directed to convey the same by proper deeds to the respective purchasers. Accordingly, on August 3, 1882, a deed was executed conveying this 393 acres to "Geo. W. Shrewsbury." It is conceded that "Wash. Solesbury," "Wash. Shrewsbury," and "Geo. W. Shrewsbury" are different names of the same person; and both parties claim under deeds alleged to have been executed by him.

The appellee contends that this person, on November 29, 1881, five days after the confirmation of the sale to him, conveyed the coal and minerals in this 393 acres, by deed with covenant of general warranty, to Wm. A. French and G. W. Straley, from whom, by various mesne conveyances, the title passed to and became vested in the appellee in the latter part of 1901. Such a deed, purporting to have been acknowledged on the day of its date before M. G. Clay, clerk of the circuit court of Wyoming county, was recorded in the clerk's office of that county on July 10, 1882, and again recorded in the same office, for reasons that do not appear, on May 1, 1886. This deed recites that it is made by "George W. Solsberry," and bears at the end the signature of "George W. Soleby," as nearly as the names can be, deciphered from the photographic copy submitted with the record. The wife of the grantor, who was married at the time, did not join in the conveyance; the words "and ———— his wife" in the printed blank being erased.

The appellants assert that this deed to French and Straley is a forgery, and they defend the pending suit mainly on that ground. Their own claim is based upon a conveyance to them, on December 8, 1906, of the coal and minerals in the tract of land in dispute. This conveyance, the execution of which is not questioned, was made by "Geo. W. Shrewsbury and Malinda Shrewsbury, his wife," and contains

a covenant that the grantors "will warrant generally the title to the coal and minerals hereby conveyed and that they have done no act to incumber the same." In the meantime, during the years 1893, 1898, 1902, 1904, and 1905, Shrewsbury and wife deeded to various persons certain portions of the surface of this tract, and in one instance a quantity of standing timber. These conveyances are unimportant in this case, except for the reservations therein made, which will be referred to later, and which are claimed to support the contention that the French and Straley deed is genuine.

Incidentally, it may be here mentioned that George W. Shrewsbury— to call him by that name—died shortly before this action was commenced, and that his heirs at law were afterwards substituted as defendants.

[1] As already indicated, the controlling question of fact in controversy is the genuineness of the deed of November 29, 1881, to French and Straley, upon which the rights of appellee obviously depend. Without repeating the argument in detail, it will be sufficient to state the principal facts upon which the appellants rely to sustain their charge that this deed is spurious. Among other things, they point out that neither Shrewsbury nor his wife could read or write; that in every deed shown to have been made by him, except the one in dispute, his wife joined, and that both of them always signed by mark; that he is named George W. Shrewsbury in every other conveyance to or from him, and would certainly not sign himself "Soleby," even if he could write his name at all; that all the deeds above mentioned of portions of the surface describe the grantors as residents of Raleigh county; that in the deed from French and Straley, on March 17, 1886, which conveys some 36 parcels, including the tract in question, they "warrant specially only the property hereby conveyed, taking the same as to quantity as represented by their title papers, and the titles just as they are, the parties of the first part guaranteeing nothing as to quantity or title"; that the appellants, when they received their conveyance from Shrewsbury and wife, in December, 1906, had no notice, actual or constructive, of any prior grant to French and Straley of the mineral deposits on this tract; that Shrewsbury repeatedly denied having made any such grant to them; that he remained during his lifetime in the actual, visible, and notorious possession of the entire tract, except those portions of the surface which he had sold; that neither French and Straley nor their successors in interest, including the appellee, ever attempted any mining operations on this tract, or took any steps to assert their rights of ownership therein, while Shrewsbury was living; and that this suit was not commenced until after his death. For these and other reasons it is alleged that the deed in question is a forgery.

In reviewing briefly the appellee's proofs, it will not be necessary to notice the evidence bearing upon all of the items in the foregoing summary of appellants' case, since it suffices to refer to the more significant and persuasive facts which presumably induced the conclusion of the court below.

In the first place it cannot be doubted that in 1881, and for a number of years afterwards, George W. Shrewsbury was commonly known

as "Wash Solesbury." He is so named in the report of the commissioner of the sale in November, 1881, and the fact is testified to by several witnesses. The land he purchased was assessed to "G. W. Solesbury" down to and including 1891, and it is noteworthy that the assessment to him for 1887 to 1890 was for the surface only of this 393 acres. And in his deed to Hilton in 1904 the description begins at a planted stone "at the upper end of the said George W. Solesbury old farm on which he now lives," etc. It is therefore not surprising, but rather to be expected, that if he gave a deed to French and Straley in 1881 it would be by the name of "Solesbury," and not by the name of "Shrewsbury."

That this man Solesbury, as he was then called, but who later assumed the name of Shrewsbury, acknowledged the execution of the French and Straley deed, is sworn to positively by M. G. Clay, who was then clerk of the circuit court of Wyoming county and took the acknowledgment in that capacity. Clay was well acquainted with Solesbury, or Shrewsbury, having served with him in the Civil War, and apparently could not be mistaken as to his identity. Whether the name signed to this deed was written by Solesbury, or by the witness himself, or by some other person, is not made at all certain by his testimony. But, whatever was the fact in that regard, we have his unqualified statement under oath that Solesbury appeared before him in person and acknowledged the execution of the instrument. This instrument was recorded in his office on July 10, 1882; the deed from French and Straley to Clark and others, trustees, was recorded in the same office on May 12, 1887; and the deed from them to appellee on June 27, 1902. It is not altogether easy to believe that these conveyances were made matters of public record without any knowledge of the same coming to Shrewsbury. Indeed, it would seem that some report must have reached him that he had given a deed to French and Straley, as otherwise there was no occasion for him to deny that he had made such a conveyance. Moreover, he could hardly have been unaware that from 1887 he was assessed for surface ownership only, and that the underlying minerals were assessed to other parties. With this information concerning a matter of special importance to himself, it seems rather strange that he made no effort to ascertain what had occurred, and took no action against those who, as is now contended, sought to deprive him of his property by a forged conveyance. And in this connection it may be observed that, if the alleged crime was actually committed, there was no attempt at concealment, for the deed was put upon record within a few months, and apparently the guilty parties could have been discovered without much difficulty.

The reservations in the deeds to various persons of portions of the surface of this tract are not without significance. In the deed to T. J. Shrewsbury in 1898, after describing the parcel sold by metes and bounds, it is stated that there is *"reserved in this conveyance the coal and mineral and all the branded timber which has heretofore been conveyed to other parties."* The reservation of branded timber apparently refers to the deed of 450 standing trees to one Blankenship in 1893. The deed to Meadows in 1902, conveying 50 acres, more or less,

219 F.—10

states that the grantors· *"do reserve thereout and therefrom all coal and mining rights and privileges, together with such other timber rights as has been stipulated in former conveyances."* The parcel in the Hilton deed of 1904 is described as *"containing 25 acres, more or less, the surface only, with the coal and mineral excepted, and with such exceptions as has heretofore been conveyed away."* In the deed to B. P. Shrewsbury in 1905, the land described is conveyed, *"with the following exceptions; that is, the coal, mineral and such other privileges as has heretofore been conveyed."* These deeds, which are limited in terms to surface rights, plainly import a previous conveyance of the coal and minerals in the same lands, and the language used cannot well be claimed to have any other meaning. But to whom had the mineral deposits been conveyed, if not to French and Straley, by the deed of November 29, 1881? In the absence of any attempt to show that Shrewsbury had made any other conveyance of the coal and minerals in this tract, the reservations contained in these surface grants tend strongly, in our judgment, to support the genuineness of the French and Straley deed.

The record contains the deposition of J. H. Shrewsbury, a son of Geo. W. Shrewsbury, who testified on behalf of appellants. On his cross-examination he disclosed that the deed to them of December 8, 1906, under which they claim the coal and minerals in this tract, was given without any consideration passing at the time, but under an agreement that they were to pay $2,000 therefor if they should win this suit. It is reasonable to assume that this was the actual arrangement, since no attempt was made to deny it, and the fact is not without bearing upon the good faith of the transaction. It tends to create an impression that appellants had sufficient knowledge or information concerning a prior conveyance, and the adverse claims arising therefrom, to put them upon full inquiry, and this impression is not lessened by the circumstance that neither of them was called as a witness.

We find no occasion for extended comment upon the opposing contentions to which we have thus referred. They have been set forth as above for the purpose of showing that no sufficient ground appears for disturbing the finding of the trial court that the French and Straley deed is genuine. As the case is presented in the printed record, and in the argument of counsel, we might hesitate to say that we "have not the least doubt" that George W. Shrewsbury executed and acknowledged the deed under which the appellee claims; but that conclusion appears to us to be supported by the weight of evidence and the balance of probabilities. Taking the most favorable aspect of appellants' proofs, there is clearly no such preponderance in their favor as would justify us in reversing the judgment on that ground. The case was fully argued before the learned District Judge, and again considered by him upon an elaborate petition for rehearing. The original deed was put in evidence and submitted to his personal inspection. If he was satisfied beyond a doubt that this deed is genuine, it is not for us to say, upon the record now before us, that this was reversible error. The remaining questions must therefore be examined upon the assumption that Solesbury, or Shrewsbury, the purchaser at the com-

missioner's sale of school section 163, conveyed the coal and minerals in that tract of land to French and Straley by his deed to them of November 29, 1881.

[2] At the time this deed was executed the grantor had only an equitable title to the coal and minerals conveyed. But the deed contained a covenant of general warranty, and this had the effect, under the settled law of West Virginia, of transferring to the grantees the legal title afterwards acquired. Thus in Summerfield v. White, 54 W. Va. 311, 46 S. E. 154, the Supreme Court of Appeals lays down the rule regarding the effect of a covenant of general warranty as follows:

"A conveyance without warranty by mere estoppel cuts off the assertion of any title or claim which the grantor had at the time of the conveyance, but it will not operate to pass to the grantee any title afterwards acquired by the grantor. If, however, there is a general warranty in the deed, it not only cuts off the existing title of the grantor, but precludes him from setting up any after-acquired title. It does more. Such after-acquired title inures to the benefit of the grantee and passes to him."

And the same court, in Clark v. Sayers, 55 W. Va. 527, 47 S. E. 318, after referring to a number of cases, states the proposition as follows:

"In most states the covenant of general warranty is held not only to estop the grantor and his heirs from setting up an after-acquired title, but also actually to transfer the estate subsequently acquired, as if it had passed by the deed in the first instance."

[3] It is equally well settled that the possession of the surface owner is not adverse to the title of the owner of the coal and minerals; on the contrary, it seems that such surface possession inures to the benefit of the owner of the underground minerals.

"It is a general presumption that one who has the possession of the surface of the land has possession of the subsoil also. But when, by conveyance or reservation, a separation has been made of the ownership of the surface of the land from that of the underground minerals, the owner of the former can acquire no title to the latter by his exclusive and continued enjoyment of the surface; nor does the owner of the minerals lose his right or his possession by any length of nonusage. He must be disseised to lose his right, and there can be no disseisin by an act which does not actually take the minerals out of his possession." 1 Cyc. 994, cited in Wallace v. Elm Grove Coal Co., 58 W. Va. 453, 52 S. E. 486, 6 Ann. Cas. 140.

"A conveyance of the underlying coal with the privilege of its removal from under the land of the grantor effects a severance of the right to the surface from the right to the underlying coal, and makes them distinct corporeal hereditaments. The presumption that the party having the possession of the surface has the possession of the subsoil also does not exist when these rights are severed." Armstrong v. Caldwell, 53 Pa. 284.

"Possession of the surface land does not carry with it possession of the coal under that surface, where the estate in the coal has been severed as to title." Plant v. Humphries, 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N. S.) 558.

We have considered and hold to be clearly untenable the contention of appellants that the conveyance to French and Straley is not a deed, but only a contract, which could be enforced, if genuine, by suit for specific performance. In our judgment it requires no argument beyond an inspection of the instrument to demonstrate that it is nothing

more or less than an ordinary deed with covenant of general warranty.

It is also urged with some insistence that the deed in question was not entitled to be recorded, because Clay, as clerk of the circuit court of Wyoming county, had no authority to take an acknowledgment. In answer to this we deem it sufficient to merely express the opinion that Clay had such authority under the act of December 21, 1875, which is reproduced in section 3 [sec. 3806], chapter 73, of the Code of West Virginia. Moreover, the contention in this regard bears only upon the question of notice, and it is plain that the case does not turn upon that point.

We are satisfied, after careful examination, that no cause for reversal has been made to appear, and the decree appealed from will therefore be affirmed.