## CONSOLIDATION COAL CO. v. YONTS et al.

Circuit Court of Appeals, Sixth Circuit. April 3, 1928.

No. 4763.

1. Mines and minerals ⬥49—Possession of surface is deemed held for owner of severed mineral right.

Possession of surface is deemed to be held for owner of a severed mineral right.

2. Equity ⬥42(2)—Matter of jurisdiction in equity for lack of adequate remedy at law was waived, where not insisted on by defendant at hearing.

Matter of jurisdiction for lack of an adequate remedy at law was waived, where not insisted on by defendant at hearing.

3. Deeds ⬥54, 56(2)—Deed must be delivered to be effective; delivery being matter of intention.

Delivery of a deed is matter of intention, and deed must be delivered to be effective.

4. Deeds ⬥57—Delivery was incomplete, where made by some of parties only to deed showing on face it was to be jointly executed.

Where deed showed on its face that it was to be jointly executed, delivery was incomplete where made by some of parties to deed only.

**5. Specific performance ⟨key⟩105(3)—Suit for specific performance of title bond covering mineral rights held barred by laches, where some defendants refused to sign deed to plaintiff's predecessors in 1902, and suit was commenced October 6, 1922.**

Suit for specific performance of title bond or "agreement for rights" agreeing to convey to one of predecessors of plaintiff mineral rights in tract of land *held* barred by laches, where some defendants declined to sign deed in 1902, and until bringing of suit October 6, 1922, no steps were taken by plaintiff to establish its claim to land after property became valuable with coming of railroad.

**6. Equity ⟨key⟩88—In equity practice of federal courts, laches need not be pleaded (Conformity Act [28 USCA § 723, 724]).**

In equity practice of federal courts, excepted from Conformity Act (Rev. St. §§ 913, 914 [28 USCA §§ 723, 724; Comp. St. §§ 1536, 1537]) laches is defense that need not be set up by plea or answer, but it rests upon long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays assertion of his claim for unreasonable length of time, especially where delay has led to change of conditions that would render it unjust to disturb them at his instance, and, if complainant does not excuse delay, laches may be taken advantage of either by demurrer or upon final hearing.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by the Consolidation Coal Company against Squire L. Yonts and others. From the decree, plaintiff appeals. Affirmed.

Allen Prewitt and E. C. O'Rear, both of Frankfort, Ky. (O'Rear, Fowler & Wallace, of Frankfort, Ky., on the brief), for appellant.

Sawyer A. Smith, of Covington, Ky., and Felix G. Fields, of Whitesburg, Ky., for appellees.

Before DENISON and KNAPPEN, Circuit Judges, and HICKS, District Judge.

HICKS, District Judge. This is a suit in equity brought by the Consolidation Coal Company against Squire L. Yonts, Mary F. Arnett, James Yonts, Sarah Yonts, Lucretia M. Cornett, James M. Yonts, Clara W. Yonts, Roy E. Yonts, Lucia Q. Belt, Crit Yonts, Beatrice Falls, Wesley Yonts, George Hogg, David Hays, Newt Reynolds, and J. H. Snyder. The presence on the record of the defendants Newt Reynolds, J. H. Snyder, George Hogg, and David Hays is not essential to a determination of the issues, and these defendants will not therefore be further noticed. The defendants James and Sarah Yonts are husband and wife. The de-

fendant Squire L. Yonts is their son. The defendant Mary F. Arnett was formerly the wife of Squire L. Yonts. The defendants Lucretia M. Cornett, James M. Yonts, Clara (Clora) W. Yonts, Roy E. Yonts, Lucia (Lausia) Q. Belt, Crit Yonts, Beatrice Falls, and Wesley Yonts are the children of Squire L. Yonts, and Mary F. Arnett, formerly Yonts.

Prior to November 24, 1894, Sarah Yonts was the owner in fee of the land in controversy in this suit. This land is located on Boones fork of the north fork of the Kentucky river in Letcher county, Ky. On November 24, 1894, James and Sarah Yonts executed to their son Squire L. Yonts, and his then wife, Mary Yonts, an instrument which is here copied as follows:

"This November 24, 1894.

"Know all men by these presents, that we James Yonts and wife Sarah Yonts have this day conveyed, sold and donated a certain tract or parcel of land to Squire L. Yonts and wife Mary Yonts and the heirs of his body as his part of the lands belonging to us in Letcher county, Kentucky, lying on the waters of Kentucky river and is bounded as follows, to wit:

"Beginning on a white oak standing near the creek at the mouth of the Still House branch running with the said branch to opposite a big hickory standing of the left hand side of said branch ascending and running with a straight line to the top of a spur to a chestnut oak running with the top of the spur to a back line down to the branch thence with the back line to the top of the spur, thence with conditional line between said Yonts and wife and Allen Hall to the creek, thence with the creek to the beginning, containing 50 acres more or less.

"To have and to hold all the lands in said boundary for his part of said estate accepting timber for farming purposes not including on the other lands, but, said boundary of lands is to stand in care of said James Yonts and Sarah Yonts till her death, then this bond is to be their signature to a deed and said boundary is not to be sold nor to be disposed of by either parties during the said parties' of the first parts lives.

"James Yonts.
"Sarah Yonts, X
"Attest:
"Amous H. Bertrand.
"Nancy C. Yonts."

This instrument was never acknowledged, but was registered. The District Judge interpreted it as a deed conveying the land to Squire L. Yonts and Mary Yonts, but retain-

ing a life estate in the grantors James and Sarah Yonts.

On December 31, 1901, Sarah Yonts and James Yonts, her husband, Squire L. Yonts, and Mary F. Yonts, then his wife, joined in the execution of a title bond or "agreement for rights," agreeing to convey to Midland Coal & Iron Company, one of the predecessors of plaintiff, the mineral rights in this tract of land. This bond is copied at page 80 of the record, and constitutes a portion of the statement of evidence. It is also referred to in the bill, and the bill states that a copy "is annexed hereto marked 'Exhibit A.'" The copy, however, does not appear as an exhibit to the bill.

On April 7, 1902, the same parties, to wit, S. L. Yonts and M. F. Yonts, his then wife, and James and Sarah Yonts, husband and wife, executed to the Midland Company another title bond or "agreement for rights" for the mineral interest in what appears to be substantially the same tract of land. A copy thereof is filed as Exhibit A to the bill and also as Exhibit B to the statement of the evidence.

On December 13, 1902, in fulfillment of these title bonds or agreements, Sarah Yonts and James Yonts, husband and wife, executed to Northern Coal & Coke Company, as successor of the Midland Company and predecessor of plaintiff, a deed conveying said mineral interests. The execution of this deed was acknowledged by said Sarah and James Yonts and duly registered. It was never executed by Squire L. Yonts and his then wife, Mary Yonts, although an inspection of it indicates clearly that it was contemplated that they should do so. Their names appear as grantors therein, and they are described in the deed as "being joint owners." This deed contains the further provision:

"Mary Yonts, wife of Squire L. Yonts, and Henrietta Yonts, wife of Robt. Yonts married women, who unite in this conveyance, do so for the purpose of, and do, hereby convey and release any and all interest they have, or may have in and to said property, rights and privileges herein bargained, sold, granted or conveyed, including that of fee in part and homestead and dower in remainder."

At the hearing, plaintiff relied upon these title bonds or "agreements for rights" and upon the deed of December 13, 1902, from Sarah and James Yonts, husband and wife, to plaintiff's predecessor, Northern Coal & Coke Company, and plaintiff insists that based thereon it is entitled to a decree adjudging it the owner of the coal under such land and to an injunction restraining the defendants Mary F. Arnett, formerly Mary F. Yonts, and her children from asserting any title or claim thereto. In other words, the suit is one to quiet title. After the execution of the instrument of November 24, 1894, Squire L. Yonts and wife, Mary, occupied this land as a home. They moved on it on March 15, 1895. They cleared certain portions of it, and cultivated and planted an orchard there, and lived together on the lands continuously with their children, defendants herein, until 1907, when Mary F. Yonts secured a divorce from Squire L. Yonts and a judgment for alimony in the sum of about $1,800. Mary F. Yonts has continued to live on the land with the children, defendants herein, since that date. She remarried to a man named Arnett.

On May 5, 1911, James Yonts and wife, Sarah, and S. L. Yonts, their son, conveyed this tract of land to Mary F. Yonts, the divorced wife of S. L. Yonts, and to their children. Mary F. Yonts took only a life estate. This instrument was properly acknowledged and registered. The consideration for it was the settlement of a judgment for alimony which Mary F. Yonts had procured against S. L. Yonts in 1907. The defendant Mary F. Arnett, formerly Mary F. Yonts, and the other defendants, children of S. L. Yonts, and his then wife, Mary, rely upon the instrument of November 24, 1894.

[1, 2] Upon the hearing, the District Judge dismissed the bill. He treated that feature of the case seeking to quiet title or remove cloud as beyond the jurisdiction, because he conceived that the plaintiff was not in possession. Frost v. Spitley, 121 U. S. 552, 7 S. Ct. 1129, 30 L. Ed. 1010. It is not clear that the plaintiff was out of possession, in view of the general rule that possession of the surface is deemed to be held for the owner of a severed mineral right, and further because, under the construction placed upon the instrument of 1894 by the District Judge, James and Sarah Yonts became life tenants, and Squire L. Yonts and wife, Mary Yonts, became their tenants at will, and the surface possession by Squire L. Yonts and Mary Yonts would not be presumptively adverse as against James and Sarah Yonts or their rightful grantees. There is the further important consideration that Squire L. Yonts and Mary Yonts joined James and Sarah Yonts in the execution of the above-mentioned title bond or "agreement for rights," and their continued surface possession thereafter could hardly be presumed to be adverse to the claim of the grantees to the mineral

interest. However, this matter of jurisdiction for lack of an adequate remedy at law was, in our opinion, waived, because it was not insisted upon by the defendant at the hearing. Alliance Ins. Co. v. Alper-Salvage Co. (C. C. A.) 19 F.(2d) 828.

We come, therefore, to the material inquiry, to wit, did the plaintiff have a good legal title? It is essential that the plaintiff show title in Sarah Yonts at the date of the execution of the deed of December 13, 1902, to plaintiff's predecessor, Northern Coal & Coke Company. Plaintiff insists, first, that the instrument of November 24, 1894, from James and Sarah Yonts to Squire L. Yonts and wife, Mary, did not divest title because it was never acknowledged; and, second, that, if this instrument conveyed anything, it was at most only some character of future equitable or contingent interest. We feel justified in declining to consider the first point. The original bill treats this conveyance of 1894 as valid and as being testamentary in its character or as an unexecuted and therefore a revokable promise or gift. Therein the allegations of the bill are inconsistent with the present claim of invalidity for lack of acknowledgment. The record fails to show that the point was made or considered at the hearing, and it is only by a very liberal interpretation of the assignments of error that we might conclude that the point was in any way presented to the District Court.

We do not find it necessary to enter into a specific interpretation of the effect of the instrument of November 24, 1894, between James Yonts and wife, Sarah Yonts, and Squire L. Yonts and wife, Mary Yonts. If the District Judge was correct in his view that this was a deed reserving a life estate in the grantors, the result follows that the suit should be dismissed. We are, however, constrained to dismiss it in so far as it seeks to remove cloud and quiet title, upon another ground.

[3] The weight of the evidence indicates to us that there was never any legal delivery of the deed of December 13, 1902, from James and Sarah Yonts to plaintiff's predecessor. Delivery is a matter of intention and is the life of a deed. The instrument of November 24, 1894, between James Yonts and wife, Sarah Yonts, and Squire L. Yonts and wife, Mary Yonts, contained the provision that "said boundary is not to be disposed of by either parties during the said parties' of the first part lives." It is not to be presumed that Sarah Yonts and James Yonts intended to violate this provision by the execution and delivery of the deed of December 13, 1902, unless Squire L. Yonts and wife, Mary Yonts, should accede to and ratify their action by likewise joining in the execution of said deed. The circumstances under which James and Sarah Yonts executed this deed are not clear. It is clear, however, from an inspection of the deed itself that it was the intention and purpose of the draftsman that Squire L. and Mary Yonts join therein. The deed was written at Pikeville, Ky., evidently by some representative of plaintiff's predecessor, and sent to the witness G. B. Vaughn, its agent. Vaughn took this deed from James and Sarah Yonts. He knew that Squire L. Yonts and Mary Yonts had declined to execute it upon their part. There is nothing in the record to indicate that the grantors James and Sarah Yonts ever knew or intended that this deed should be anything other than a joint conveyance between all the grantors therein, as indicated by the deed itself, except the indefinite recollection of the witness Vaughn that Squire L. and Mary Yonts were present at its execution. A careful reading of the testimony of the witness Vaughn convinces that his recollection of the whole transaction is hazy and unreliable. Mrs. Arnett, formerly Mary Yonts, testifies as follows: "I did not know of any deed until about four years ago. About four years ago we planned to lease it, and when we went down to take the abstract, we found this deed to the mineral that the old folks had signed up. That was the first time that I knew that James Yonts and his wife had attempted to convey the mineral on the property of my husband and me." As a further indication that James Yonts and Sarah Yonts never intended the deed of December 13, 1902, to be effective until executed by their cograntors mentioned therein, to wit, Squire L. Yonts and Mary Yonts, there appears in the record the deed of May 5, 1911, from James Yonts and wife, Sarah Yonts, and S. L. Yonts, their son, to the children of S. L. and Mary Yonts covering this same boundary of land.

[4] In 18 C. J. at page 212, § 117, it is said: "A delivery is incomplete where made by some of the parties only to a deed which shows on its face that it was intended to be jointly executed so that all should be bound by its covenants." The footnotes cite the cases of Overman v. Kerr, 17 Iowa, 485, and Arthur v. Anderson, 9 S. C. 234. A statement of the principle is carried in Devlin on Real Estate (3d Ed.) vol. 1, p. 442, § 277, as follows: "Where there are several joint owners who intend to convey the land held

by them by a deed to be executed by all, and all but one of them join in executing a deed, which is delivered to a third person to obtain the signature of the other owner and then to deliver it to the grantee, the deed is not delivered as to those who have signed unless the other grantor also execute it." See, also, Wisconsin & Michigan Ry. Co. v. McKenna, 139 Mich. 43, 102 N. W. 281.

[5] Having thus disposed of the matter of legal title, there remains for consideration the claim for specific performance entertained by the District Judge; that is to say, whether the plaintiff is entitled to specific performance of its title bond or "agreement for rights" of April 7, 1902. Upon this feature, the court below dismissed the bill for laches, and we agree with that view. The plaintiff's predecessor knew that Squire L. Yonts and Mary Yonts had declined to sign the deed of December 13, 1902. There is a sharp conflict in the record as to the reason for the declination. Plaintiff insists that they declined because they had already been overpaid the contract price. The defendant insists that they had not been paid at all, but the outstanding fact is that they did decline to execute this deed. Until the bringing of this suit October 2, 1922, no steps were taken by plaintiff to establish its claim to this land. The evidence as to whether the purchase money stipulated in any of these title bonds or "agreements for rights" was ever paid has faded with the years. Parties who knew are dead. These include John C. C. Mayo, the agent who made these contracts, M. F. Fleming, the bookkeeper who kept the records, and W. B. Johnson. The checks with which it is supposed Mayo paid for this land have become lost. The children of Squire and Mary F. Yonts, now Mary F. Arnett, do not hold the land by inheritance. They hold it by grant or deed from S. L. Yonts, and the consideration which he received for the execution of this deed and which Mary F. Yonts, now Mary F. Arnett, parted with, was the settlement and release of the judgment for alimony against him. Under these circumstances plaintiff neglected to assert its claim until this property became valuable with the coming of a railroad. It is not necessary to engage in a discussion of the equitable principle of laches. Every case depends upon its own circumstances, and the determination of every case depends upon the good judgment of the court judicially applied.

We find nothing in this record to justify the conclusion that the court abused its discretion herein or to impel this court to dissent from his views.

[6] Upon the point that laches was not pleaded, we quote briefly from Hays v. Port of Seattle, 251 U. S. 238, 40 S. Ct. 127, 64 L. Ed. 243, to wit:

"The only answer made to this is that the defense of laches was not pleaded. But in the equity practice of the courts of the United States (excepted from the Conformity Act, see Rev. Stats. §§ 913, 914 [28 USCA §§ 723, 724; Comp. St. §§ 1536, 1537]) laches is a defense that need not be set up by plea or answer. It rests upon the long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays the assertion of his claim for an unreasonable length of time, especially where the delay has led to a change of conditions that would render it unjust to disturb them at his instance. It is for the complainant in his bill to excuse the delay in seeking equitable relief, where there has been such; and if it be not excused his laches may be taken advantage of either by demurrer or upon final hearing."

The decree is affirmed.