## Brennan et al., Appellants, *v.* Pine Hill Collieries Co. et al.

Argued April 13, 1933.   Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*George C. Klauder,* with him *Samuel Kagle* and *Arthur L. Shay,* for appellants.

*Roscoe R. Koch,* with him *Penrose Hertzler, Cadmus Z. Gordon, Jr.,* and *Drinker, Biddle & Reath,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, June 30, 1933:

Claiming that they were the owners in fee of two parcels of land in Cass Township, Schuylkill County, Pa., containing .703 and 1.588 acres respectively, plaintiffs filed a bill in equity to have defendants restrained from removing coal from, and from trespassing on or carrying any materials through, the strata underlying these properties. Their alleged title is based entirely on one which their father acquired by adverse possession of the surface of the tracts for a period of more than twenty-one years, from 1862 to 1884.   Their contention is that the effect of such possession was to give to him, and through him to them, a title not only to the surface, but to the

underlying strata also. The court below decided that
they had established their claim to the surface but that
their title was limited to it, and hence dismissed the bill.
The decree must be affirmed.

Both sides agree that a title to the surface, acquired
as a result of adverse possession, will carry with it title
to the underlying strata, if nothing else appears; but,
if the two titles were effectively severed before the ad-
verse possessor's title became complete, a different con-
clusion must be reached. Whether or not there had been
such a severance in this case is the question we are to
solve.

Plaintiffs state in their brief that "since the plaintiffs
and their predecessors [i. e., those claiming under the
title acquired by adverse possession] have always been
in exclusive possession of these parcels since 1862 and
1863, the defendants and their predecessors were placed
on notice of their [plaintiffs'] claim under the Statute
of Limitations." This contention cannot be sustained.
The dates stated are the times when plaintiffs' father
first took possession of the two parcels, but he had no
interest which the law recognizes, even in the surface
thereof, until the full twenty-one years had run after his
entry, that is, until 1883 and 1884. "To give evidence of
adverse possession is not to carry back title by the Stat-
ute of Limitations to the beginning of it; for the statute
is not maturing an inchoate title while it is running its
course against an adverse one. The title of the original
owner is unaffected and untrammelled till the last mo-
ment, and when it is vested in the adverse occupant, by
the completion of the statutory bar, the transfer has re-
lation to nothing which preceded it": Graffius v. Totten-
ham, 1 W. & S. 488, 494; Schall v. The Williams Valley
R. R. Co., 35 Pa. 191, 205; Jordan v. Chambers, 226 Pa.
573, 579.

It follows that if there was an entrance upon and pos-
session taken of the subsurface of the two parcels by the
real owners, or any one claiming a right through them,

at any time before the title of plaintiffs' father became complete, it operated to toll the running of the statute of limitations so far as concerned the subsurface, and the possession of plaintiffs' father, and those claiming under him, to anything more than the surface must go for naught, for thereby the essential element of continuity (Hawk v. Senseman, 6 S. & R. 21; Read v. Thompson, 5 Pa. 327, 331; Camp Chicopee v. Eden, 303 Pa. 150) was broken, so far as concerned the subsurface.

Was there such an entry on the mineral estate prior to 1883 and 1884? The two parcels, since long before these dates, had been and still are part of the Diamond Tract, and, as regards it, the court below found the following facts, which must be accepted as true, since they are not assigned as error: "There is no doubt about the fact that the veins beneath the Diamond Tract of 98 acres, have been mined since 1836 with the exception of from 1868 to 1887 . . . . . . Inquiry would have revealed to him [plaintiffs' father, through whom they claim title] that for 22 years before he squatted there, the tract had been mined, was then being mined, and would be mined without cessation for six years more." As this finding shows that the surface and subsurface had been severed long before the title of plaintiffs' father became complete, the fact of the lack of mining for a period thereafter becomes a matter of no moment in this case, because, under such circumstances, the owner of the subsurface estate "is not affected by the state of the title to or the possession of the surface": Algonquin Coal Co. v. Northern Coal & Iron Co., 162 Pa. 114.

It is true, there is no proof that any part of the mining thus referred to was under the two parcels now claimed by plaintiffs, but this is a matter of no moment, since it was under the Diamond Tract, of which the two parcels are a part: Delaware & Hudson Canal Co. v. Hughes, 183 Pa. 66. Nor is there any direct proof under what authority the mining took place; but since a min-

ing and carrying away of the coal, without the consent of the real owner, would be a criminal offense, the presumption of innocence applies, and, there being no proof to the contrary, the necessary conclusion is that it was done under the authority of the real owner: Horan v. Weiler & Ellis, 41 Pa. 470; Phœnix Brewing Co. v. Rumbarger, 181 Pa. 251. It is also a necessary conclusion that the owner of the coal, who gave to those miners the right to remove it, either thereby severed the two estates, or found them already severed, and that status, once found to exist, is presumed to have continued (Armstrong v. Caldwell, 53 Pa. 284), in the absence of proof to the contrary, of which there is none. It follows that the adverse possession of plaintiffs' father did not include the mineral estates which, as stated, had been severed from the surface estate, before he acquired any title thereto (Algonquin Coal Co. v. Northern Coal & Iron Co., supra), and plaintiffs, whose title is founded on and limited by his, rises no higher.

It may be that the court below would have been justified in finding as a fact, nothing being shown to the contrary, that there had long been a severance of the two estates, basing such a conclusion on the admitted fact that all around these small parcels, and within the limits of the Diamond Tract, there was ocular proof that coal was being mined, and the well-known further fact that anthracite coal mining is always done under large tracts only. Hence, as we have several times pointed out, severance has become the usual status in the anthracite coal regions (Caldwell v. Copeland, 37 Pa. 427, 431; Delaware, Lackawanna & Western R. R. Co. v. Sanderson, 109 Pa. 583, 589), as every one residing in or near there must know. This case does not require a definite decision of that point, however.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants.