KANAWHA AND HOCKING COAL AND
COKE COMPANY, Plaintiff
and Appellant,

v.

CARBON COUNTY, a Municipal Corporation,
and Centennial Development Company, a
corporation, Defendants and Respondents.

No. 13853.

Supreme Court of Utah.

May 6, 1975.

Wallace D. Hurd, Salt Lake City, for plaintiff-appellant.

Dan C. Keller, Carbon County Atty., Price, John W. Horsley, Salt Lake City, James T. Jensen, Price, for defendants-respondents.

ELLETT, Justice:

Plaintiff initiated these proceedings in the District Court of Carbon County for the purpose of quieting its title to a tract of land in Township 13 South, Range 10 East, Salt Lake Meridian. The original suit was filed by North American Coal Corporation, and while these proceedings were pending the land was sold and conveyed to the plaintiff. By their answers both defendants admit that the plaintiff is the owner of the surface but deny that the plaintiff owns the coal underlying the premises. Carbon County claims title to the coal by virtue of two sales for unpaid taxes for the year 1932, and an auditor's tax deed recorded May 26, 1937. The second tax sale was for unpaid 1944 taxes and an auditor's endorsement was recorded June 13, 1949. The district court granted a summary judgment in favor of the County as to ownership of the coal.

The County relies upon the statute of limitations as a defense to this suit. The sections relied upon are as follows:

78-12-5.2. U.C.A.1953 (1973 Pocket Supp.). No action or defense for the

recovery or possession of real property or to quiet title or determine the ownership thereof shall be commenced or interposed against the holder of a tax title after the expiration of four years from the date of the sale, conveyance or transfer of such tax title to any county, or directly to any other purchase thereof at any public or private tax sale and after the expiration of one year from the date of this act. Provided, however, that this section shall not bar any action or defense by the owner of the legal title to such property where he or his predecessor has actually occupied or been in actual possession of such property within four years from the commencement or interposition of such action or defense.
. . .

78–12–5.3, U.C.A.1953 (1973 Pocket Supp.). The term "tax title" as used in section 78–12–5.2 and section 59–10–65, and the related amended sections 78–12–5, 78–12–7, and 78–12–12, means any title to real property, whether valid or not, which has been derived through or is dependent upon any sale, conveyance or transfer of such property in the course of a statutory proceeding for the liquidation of any tax levied against such property whereby the property is relieved from a tax lien.

Definition of "Action."

The word "action" as used in these sections includes counterclaims and cross-complaints and all civil actions wherein affirmative relief is sought.

The record does not reveal that the plaintiff or either of the defendants was in actual possession of the beds of coal beneath the premises. For the purposes of the defendants' motion for a summary judgment in the district court, the invalidity of the county auditor's conveyances to the County was assumed as a matter of fact and law.

The general property taxes for the surface rights of the property have been assessed separately from the mineral rights. Carbon County assesses taxes to the surface rights and the Utah State Tax Commission assesses taxes on the coal beds. The plaintiff and its predecessors paid the taxes assessed against the surface, but since the County owns the mineral rights no taxes have been assessed thereon.[1]

It is the plaintiff's contention that its possession and its predecessors' possession of the surface constitute possession of the subsurface minerals. The tax sale of the mineral rights and the auditor's deed thereto were effective to sever the surface estate from that of the underlying minerals.

Plaintiff cites a number of cases to support its position that its continued possession of the surface was adverse possession of the minerals. We are of the opinion that the better rule is that where title to the surface and that of the underlying minerals have been effectively severed, possession of the surface, when unaccompanied by any acts of dominion over the minerals, does not constitute adverse possession of the minerals.[2]

Since the county received its tax deed to the mineral rights more than four years prior to suit, and since the plaintiff has not been in actual possession of the mineral rights conveyed to the county by that tax deed, the statute of limitation has run and the plaintiff cannot recover. The judgment of the trial court is therefore affirmed.

No costs are awarded.

HENRIOD, C. J. and CROCKETT, J. concur.

---

1. Art. VIII, Sec. 2, Constitution of Utah.

2. Shrewsbury v. Pocahontas Coal & Coke Co., 4 Cir., 219 F. 142; Consolidation Coal Co. v. Yonts, 6 Cir., 25 F.2d 404; Catlin Coal Co. v. Lloyd, 180 Ill. 398, 54 N.E. 214; Uphoff v. Tufts College, 351 Ill. 146, 184 N.E. 213, 93 A.L.R. 1224; Prewitt v. Bull, 234 Ky. 18, 27 S.W.2d 399; Brennan v. Pine Hill Colliers Co., 312 Pa. 52, 167 A. 776; Luse v. Parmer (Tex.Civ.App.), 221 S.W. 1031.

TUCKETT, Justice (dissenting).

I dissent. The tract of land here in question was owned by the Utah Fuel Company. On December 23, 1932, the Utah Fuel Company conveyed the surface rights of the property to the Utah Grazing Lands Company. On August 31, 1950, the Utah Grazing Lands Company reconveyed the surface rights to the Utah Fuel Company. Through mesne conveyances the plaintiff herein became the owner of the property.

Plaintiff's predecessor in interest, Utah Fuel Company, acquired the surface as well as the mineral estate by acquisition of a fee simple title from its predecessor. At the time of acquisition the Utah Fuel Company became seized of the surface as well as the mineral rights. Seisin once established is presumed to continue until the contrary is proved. It appears that the plaintiff's right to possession of the minerals as an incident of its ownership has been continuous, and if there has been a disseisin of the plaintiff's possession or right to possession it must have stemmed from the conveyances by the county auditor to Carbon County. Inasmuch as the invalidity of the county's tax title is assumed for the purpose of this appeal it was ineffective in disseizing the plaintiff of its ownership.[1]

The terminology contained in Section 78–12–5.3 quoted in the main opinion wherein it states "any title to real property, whether valid or not," if interpreted to mean that a person holding under a void tax title can bar the true owner from recovering his property would violate the due process clauses of both the state and federal constitutions, ·and if some other connotation is given to the words used it would appear to the writer that it is subject to a constitutional challenge for vagueness.

In view of the provisions of Section 78–40–13, U.C.A.1953, it appears to the writer that a summary judgment is inap-

propriate in an action to quiet title. The pertinent part of that section is as follows:

> When the summons has been served and the time for answering has expired, the court shall proceed to hear the cause as in other cases, and shall have jurisdiction to examine into and determine the legality of the plaintiff's title and of the title and claims of all the defendants and of all unknown persons, and to that end must not enter any judgment by default against unknown defendants, but must in all cases require evidence of plaintiff's title and possession and hear such evidence as may be offered respecting the claims and title of any of the defendants, and must thereafter enter judgment in *accordance with the evidence and* the law. . . . [Emphasis added.]

I would remand for the purpose of having the trial court take evidence and determine the nature of the defendants' title and to comply with the statute above quoted.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of TUCKETT, J.

---

1. Ownbey v. Parkway Properties, 222 N.C. 54, 21 S.E.2d 900; Thompson on Real Property, Sec. 31, p. 131, 1964 Rept.